UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                                      PLAINTIFF

v.                                                                                      CRIMINAL ACTION NO. 3:07CR25-S

RONALD JEFFERIES                                                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendant, Ronald Jefferies, to reopen his motion for reconsideration of the court's June 26, 2007 denial of his motion to suppress evidence seized pursuant to a search warrant for 2132 Middle Lane. On October 19, 2007, the court denied Jefferies' motion for reconsideration of the June order. This is Jefferies' third bite at the apple, again attempting to establish that he has standing to challenge the search of 2132 Middle Lane.

Jefferies' original motion to suppress was denied on the ground that he had alleged no connection to the place searched or the items seized from 2132 Middle Lane. As he had not shown any expectation of privacy in this place, much less a legitimate one upon which to base a Fourth Amendment challenge, the court denied the motion. (June 26, 2007 Order).

Jefferies moved for reconsideration of the order, providing a copy of the lease of the house to Jefferies and noting that he had the keys to the premises on his person which were apparently used to gain entry. Jefferies urged that the lease and keys afforded him an expectation of privacy in the place searched and the items seized, despite the fact that he denied living there and there were indications that the Middle Lane residence[1] was used as a stash house. The court found that Jefferies

---

[1] Jefferies makes much of the term "residence," noting that the officers used the term in their affidavit and application for search warrant. We are not concerned so much with the characterization of the building, but rather with the use to which it was put by the defendant. Distinguishing a place as a residence, as opposed to a commercial property, a public facility, etc., is of limited use in our analysis. What is significant is that Jefferies denied that it was his residence and no one appeared to reside there.

had not manifested a subjective expectation of privacy in the place searched, despite his reference to a lease and a key. Nor had he shown that any such expectation was one that society is willing to recognize as reasonable. October 19, 2007 Order, pp. 3-4.

Jefferies has moved to reopen his motion for reconsideration. The United States objects. The court will permit the reopening of the motion, and permit Jefferies to add his affidavit to the record.[2]

In support of his request that the court reconsider the suppression ruling, Jefferies has now provided an affidavit in which he states that

> 1. He has leased the residence at 2132 Middle Lane since December of 2005. He lived at the residence until July of 2006. He continued to lease the property up to and including the day of the search and paid rent to the property owner.
>
> 2. He had some items of personal property there including clothing and a stereo system. He received various pieces of mail there including a bill for the insurance he maintained on the property.
>
> 3. He paid for a security system for the property which was in use at the time of the search.
>
> 4. He went to the residence from time to time. He had a key to the property which was taken from him and was used to unlock the door on the date of the search.

Simply leasing a premises and possessing a key does not create a reasonable expectation of privacy which society is willing to recognize as reasonable where the evidence shows that the location was used solely for conducting illicit business. *United States v. Gomez*, 770 F.2d 251 (1st Cir. 1985); *Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).

However, assuming that Jefferies' affidavit evidences that he, indeed, manifested a subjective expectation of privacy in 2132 Middle Lane and we were to conclude that the expectation is a legitimate one, we conclude that the affidavit in support of the application for a search warrant for the premises was sufficient to support the issuance of the warrant.

---

[2] Jefferies has moved for acceptance of the late filing of his reply brief (DN 101). The United States has responded that it has no objection. The motion will therefore be granted.

The following information was provided in the affidavit:

1. In late November, 2006, the affiant, Detective Rod Seelye, received information that Ricky Calloway "moves" 300 kilos of cocaine at a time, had a Mexican connection for large quantities of cocaine, and used female "mules" to transport cocaine.

2. Independent investigation revealed that Calloway had four prior convictions for cocaine trafficking.

3. Investigation revealed that Calloway, Ronald Jefferies, Stacy Todd, and Larry Young were all members of Advanced Realty LLC. Jefferies, Todd and Young also had prior convictions for cocaine trafficking.

4. Investigation revealed PNC bank accounts in the name of Jefferies, Calloway and/or Advanced Realty. The Advanced Realty account did not appear to be a business account, as there were no payroll checks or other business expenses paid, but instead had large dollar out of state wire transfers from the account.

5. Investigation revealed that from June through October, 2006, Jefferies made several large even dollar cash deposits and obtained a large cashier's check payable to himself. He also conducted several large even dollar out of state wire transfers that did not exceed $10,000 each.

6. Calloway was observed transporting trash away from his residence at 7219 Oakburn Dr. which the affiant noted was a common counter surveillance activity of drug dealers, designed to avoid detection of drug activity through "trash pulls" by law enforcement. Additionally, a unusual amount of vehicle traffic including frequent out of state vehicles which at times stayed overnight. Several individuals were observed entering and exiting the residence including Jefferies.

7. The investigation revealed activity involving a 1988 Lincoln Town Car, Ky. Registration No. 438EEV, which affiant stated was operated by both Calloway and Jefferies, was seen parked at Calloway's residence and at 2132 Middle Lane on several occasions in December 2006. At the beginning of December, 2006, a black Nissan Titan Ky. Registration No. 173AZK registered to Jefferies was seen by the affiant parked behind the Town Car at 2132 Middle Lane. On December 18, 2006, the Louisiana State Police interdicted the Town Car and recovered none kilos of cocaine and $80,000 in cash from a compartment under a false bottom in the trunk of the vehicle. Surveillance on the vehicle prior to the stop revealed that it had traveled from Louisville to Houston, Texas and stayed less that twenty-four hours before returning on the same route until it was interdicted.

8. Earlier on December 12, 2006, the affiant was provided information from other narcotics officers about Calloway. A confidential informant had stated 1 ½ years earlier that Calloway was a large scale cocaine dealer who conducted multiple kilo drug deals in Louisville. Further, a consensual search of Calloway at the Louisville International airport revealed that Calloway had $3,000 in cash, drug notes, and a

sheet of paper with a UPS tracking number on it. The UPS package was found to contain canisters with false bottoms which are commonly used to conceal narcotics.

9. On December 19, 2006, a search warrant executed at Calloway's residence yielded $5,000 in Calloway's pockets, $22,980 in a safe, baggies containing suspected narcotics residue, marijuana on the person of Daniel Calloway who was also present at the residence, cocaine in Daniel Calloway's vehicle, a receipt dated December 18, 2006 from Love's Country Store in Louisiana, a partially completed wire transfer in the amount of $24,000, a contract to provide legal representation for Pamela Scott and Calisa Shirley by Criminal Defense Associates for $100,000 dated June 16, 2006, and copies of wire transfers in large sums close to but not exceeding $10,000 dated June 21, 2006 and September 20, 2006. Three such wire transfers were in the name of Ronald Jefferies. The affiant noted that, in his experience, wire transfers in amount note exceeding $10,000 were often so structured to avoid reporting requirements for such transactions. He further noted that in his experience, legitimate realty businesses do not typically wire sums of money for the criminal defense of persons charged with drug trafficking crimes, and such expenditures are not ordinary business expenses of a realty company.

10. The affiant learned through further investigation that Calisa Shirley was being held in Texas on charges of possession with intent to distribute cocaine, having been arrested on June 14, 2006 with thirty kilos of cocaine and two handguns. The affiant also learned that a person who signed and represented himself as Ronald Jefferies emptied the account of Advance Realty withdrawing approximately $35,000 the day after Calloway was searched and arrested.

11. In January, 2007, a confidential source told the affiant that he had seen a black Nissan Titan parked in front of 2132 Middle Lane on numerous occasions. The confidential source also stated he had seen a yellow Hummer parked in front of the residence. The affiant learned through further investigation that Calloway owned and operated a yellow Hummer. The confidential source stated that people are rarely present at 2132 Middle Lane and it did not appear as if anyone was living there.

12. On February 5, 2007, the confidential source contacted affiant and informed him that the black Nissan Titan was again parked in front of 2132 Middle Lane. Affiant knew from earlier in the investigation that Jefferies owned and operated a black Nissan Titan. After receiving this information, detectives located the vehicle and Jefferies in a phone booth nearby. Jefferies had an envelope in his hand with the name and address of Calisa Shirley on it. K-9 Sarah, a drug detection dog, alerted to Jefferies' pocket in which officers found $6,500. Jefferies stated that he was collecting rent for Advance Realty, that he had not been to 2132 Middle Lane, that he did not live there and did not know who lived there. Later Jefferies stated that he had been to the Middle Lane residence.

Based on the foregoing facts, the affiant stated that he believed that Calloway, Jefferies, and others were engaged in an ongoing drug trafficking conspiracy or enterprise that involved transporting multiple kilograms of cocaine from Texas to the Louisville Metro area for distribution.

- 4 -

He stated that he believed that they used female "mules" to transport the drugs. He stated that he believed that the enterprise had been ongoing since at least 2001 and involved concealing drug proceeds in various bank accounts or converting the proceeds into other assets. He stated that due to the long term nature of the enterprise and means of concealment of proceeds, he believed that cash, contraband, and financial documents relating to drug trafficking and concealment of drug proceeds were retained, stored or kept within the residence at 2132 Middle Lane.

Jefferies urges that "the affidavit thus...fails to sufficiently 'link' any of Jefferies' alleged off-site criminal activity to the Middle Lane residence through either Jefferies himself or his black Nissan Titan." Reply to Response to Motion to Suppress (DN 56), p. 6. He also urges that the affidavit fails "to establish that Jefferies (or any other suspect) resided [at 2132 Middle Lane], or had been seen engaging in any suspicious or criminal activity there, and the affidavit's consequent failure to <u>connect</u> any of the alleged off-site criminal activity to that residence through any of the suspects." *Id.*, p. 7 (emphasis in original).

As noted in *United States v. Pinson*, 321 F.3d 558, 561 (6th Cir. 2003), an affidavit for search warrant "is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." There need only be sufficient facts for the magistrate to find, based upon the totality of the circumstances, that there was probable cause for the search. *Id.* at 565.

The Supreme Court has established that "[t]he critical element on a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *United States v. Pinson,* 321 F.3d 558, 564 (6th Cir. 2003), *quoting, Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). Thus the challenge to the affidavit on the basis that it did not appear that anyone lived at the Middle Lane address, or more particularly that Jefferies was not shown to reside there, is without merit. Rather, the affidavit sufficiently connects the dots between the suspected Advance Realty drug trafficking enterprise of which

Jefferies was allegedly a part and the use of the Middle Lane residence as a stash house for cash, contraband and documents.

Jefferies nitpicks the affidavit with criticisms, noting, for example, that the black Nissan Titan seen parked outside the Middle Lane residence in December 2006 and January and February 2007 was not said to be the same black Nissan Titan that Jefferies owned. Granted, there are numerous black Nissan Titans in the world. However, he postulates this argument in the face of the contention that shortly after the vehicle was observed parked outside the Middle Lane residence Jefferies together with his black Nissan Titan were found and searched in the parking lot of a local liquor store.

Jefferies urges that no link has been shown between Jefferies and the Middle Lane residence despite the observation of a black Nissan Titan at various times during 2007 parked behind a Lincoln Town Car at the Middle Lane residence. The affiant stated that Jefferies was known to own and operate a black Nissan Titan. Both Calloway and Jefferies, suspected co-conspirators in a drug-trafficking enterprise, were known to operate a particular Lincoln Town Car. That Lincoln Town Car was found on December 18, 2006 to contain nine kilos of cocaine and $80,000 in cash in a compartment under a false trunk bottom in the vehicle. Yet Jefferies contends that no link has been shown between the alleged drug-trafficking activity and the residence because the affidavit fails to state that either Jefferies or Calloway were observed operating the vehicles in question on the occasions the vehicles were parked at the Middle Lane address.

First, common sense need not be checked at the door. The vehicles arrived at the residence through the locomotive effort of someone, most likely the owners and operators of them. Second, the argument loses sight of the fact that the defendants themselves need not be shown to have been engaged in criminal activity there or even present at the residence. What is required is a factual nexus between the suspected criminal activity and the place to be searched.

With respect to Jefferies and his black Nissan Titan, he was found with his vehicle shortly after the vehicle was seen parked at the residence. The affiant stated that he was searched, a drug detection dog alerted to a drug odor, he was found to be in possession of a large quantity of cash, and he made a number of inconsistent statements concerning his familiarity with the Middle Lane residence. Jefferies was known to have a drug trafficking conviction, was suspected of being a co-conspirator in a drug trafficking enterprise, and had a known connection to vehicles which were observed periodically parked in front of the Middle Lane residence, premises which appeared to be uninhabited.

Calloway was also known to the affiant to have a drug trafficking conviction. A connection between Jefferies and Calloway was found through the Advance Realty operation believed to be a sham business concealing the suspected drug trafficking operation. Calloway was known to operate a Lincoln Town Car which was often observed parked at Calloway's residence. The affiant stated that the Town Car was found on December 18, 2006 to contain drugs and cash. A search of Calloway's residence yielded ample evidence connecting Calloway to the alleged conspiracy to transport quantities of cocaine from Texas to Louisville.

A Town Car had been observed periodically parked at the Middle Lane residence in front of a black Nissan Titan. The magistrate judge found probable cause to believe that evidence of drug trafficking would be found on the premises at 2132 Middle Lane. There were sufficient facts alleged establishing a nexus between the vehicle traffic to and from this apparently unoccupied residence and the suspected drug trafficking operation. The affiant presented facts to establish probable cause for the magistrate to determine, under the totality of the circumstances, that probable cause existed for the issuance of the search warrant for 2132 Middle Lane.

Jefferies makes the point that the affiant referred to 2132 Middle Lane as a "residence," and not as a "stash house." The affidavit when read as a whole makes clear that the term "residence" was used to distinguish the premises from a business, warehouse, or public place. That is, that it was

residential property. The affidavit specifically states that the premises appeared to be uninhabited. This fact coupled with the periodic appearance of vehicles there suggests use for some purpose other than dwelling. The periodic coming and going from an uninhabited residence of various vehicles known by the affiant to be owned and operated by suspected drug traffickers reasonably suggested the use of the premises as a "stash house" despite the affiant's lack of employment of that specific term. The final paragraph of the affidavit in which the affiant stated that he believed that cash, contraband, and financial documents relating to drug trafficking were retained, stored, or kept at 2132 Middle Lane states that conclusion.

The court concludes that the affidavit in support of the search warrant was sufficient and the motion of the defendant to suppress must be denied.

For the reasons set forth herein above and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Ronald Jefferies, to reopen his motion for reconsideration of the denial of his motion to suppress (DN 95) is **GRANTED** and Jefferies' affidavit in support of his motion is ordered **FILED**. The motion of the defendant, Ronald Jefferies, for leave to file his reply brief out of time (DN 101) is **GRANTED**. The motion of the defendant, Ronald Jefferies, to suppress evidence (DN 35) is **DENIED** for the reasons set forth in this and previous opinions.

**IT IS SO ORDERED.**